Thank you, Your Honor. May it please the Court, I'm David Schwartz. I'm in court on behalf of the appellants, the Bensons. We're the Judgment Predators. We're asking this Court to reverse the lower court's decision to dismiss our garnishment action while originally it was on a court and we moved to federal court and ordering us to go arbitrate our disputes related to the garnishment and perhaps other issues as well. We think the lower court erred because under the Federal Arbitration Act, while it does have a progressive policy, Arizona state law is what's going to end up controlling in this matter. We think the lower court erred by supplanting the Arizona case that was right on point, the Able Distributing Company case, which directly held that in a garnishment action the Judgment Predators, such as ourselves, are not required to follow the garnishment even if there is one provision in the contract. Now I think that the notice of supplemental citations, while most of the cases are really not on point, they do help direct us to the correct answer. The Shivkoff case recently decided by this court involved a non-signatory to a contract who was successful in compelling a signatory to actually arbitrate. The federal court relied on what's called the alternative estoppel. But the case they cited to, Sun Valley Ranch 308 Limited Partnership v. Wapson, which this isn't cited in the briefs, I'll give you the citation, 231 Arizona 287, it's cited in the Shivkoff case, what it said and why it's different in our case is, hey, when you're on non-signatory, it's a lot easier to force a signatory to arbitrate under the clause. And they specifically said there's a completely different standard and test when you're a signatory, as is the case here, and trying to force someone who was not a party to the contract to go ahead and arbitrate nevertheless, even though they never agreed to do so. Mr. Schwartz, finish your thought and then I want to ask you, tell you what concerns me about your position and see if you can respond to it. Go ahead. I was finished with that thought. I agree that Abel has language very helpful to your cause, but it's a court of appeals opinion. And we're trying to predict what the Arizona Supreme Court would do under similar circumstances. And there's been a lot of water under the bridge since Abel in the Supreme Court of Arizona seems to have generally adopted this direct benefits estoppel doctrine in a variety of circumstances, not in not in the circumstances of your case. We all agree there's no Arizona Supreme Court case on point. But in this case, this is a long winded question, but it gets to my concern. So I apologize in advance. In this case, what your garnishment seeks to do is obtain Capri's rights against the insurance company. So if Capri were suing the insurance company today, I don't have much doubt it would be subject to arbitration, given that you're seeking to fall heir to their rights with your garnishment, if you will. Why shouldn't we reach the same result in your case? We don't view ourselves as being in the way the lower court perhaps discussed it, and I know our opponents did. We didn't step into the shoes of Capri. We're not like someone who got an assignment. When you get an assignment of somebody, you step into their shoes. They give you their rights. You sue on it. It is true that in laboratory they talk about we're substantially similar to a contract action. I prefer to view a garnishment much like the Iowa Court of Appeals did in Penford and the Fourth Circuit did in the Harkins case, that what we are doing is attaching a debt. It is true that to determine whether or not a debt exists and how much of that debt is, we do have to at least relate to the contract. But we're not knowingly stepping into the shoes. We didn't sue on an assignment or reach a contract theory. It's why we think it's different. The other point I would make is that in light of the JTF aviation case that just came out that was cited in the supplemental citation where they said, hey, there's all this federal law about the closely held doctrine. Arizona doesn't follow it. That if your honors are inclined in any way not to follow the ABLE decision, I think what your honors should be doing is certifying the issue to the Arizona Supreme Court. The other point I want to make is that the cases we've cited to you tell you that, hey, when there's only an appellate court, while you're supposed to predict what the Supreme Court would do, you're still pretty much supposed to kind of follow unless there's clear evidence that the Supreme Court would come to a different decision. And I don't think that exists here. The cases that are cited all are completely distinguishable. They deal with whether or not it's the signatory versus the non-signatory, trying to compel whether they're suing basically directly on the contract itself, which we're not. This is not a direct action. Because if it was a direct action, this court has no jurisdiction. It could never have been, this case could never have been removed. Aren't you suing to obtain rights? You're suing under the contract. You're claiming rights through and under the contract. And so there's no extant state court judgment against the insurer. You're here trying to obtain that. And so in light of that, why isn't this really governed by what we said in the Labrature case? The Labrature case said nothing about arbitration. All the Labrature case said is once you remove, the procedure you follow is what we do like any other civil case. It didn't say, hey, is a form selection clause applicable? Is the time limit in a contract applicable? Which was expressly the issue in the JTF case. We don't, it's completely different than our point in talking about the procedure. Now we're talking about what is the substantive law of Arizona. I think in Labrature, weren't we just addressing whether the 10-day time limit for a response to the denial applied? That's correct. It's why the context was just about procedural issues about, in that particular case, the 10-day time limit, which is why. I'm curious about something else as well. There's a very neat formulation in the Arizona cases, particularly one of them, of the direct benefits of stop all theory that Arizona purports to have adopted. It's stated like a restatement rule, easy to apply. But my impression is that most of the Arizona cases distinguish it rather than applying it. Is that correct, or are there some direct applications that I should be more aware of? I'm not aware of any Arizona case where a signatory has compelled a non-signatory under the direct benefits. To my knowledge— That's what I'm asking. Yeah, and I'm not aware of any. Thank you. The other thing I would point out about the whole direct benefits issue, the Schoenberg case, which is what the lower court relied upon in talking about Arizona law, doesn't actually adopt that. It discusses it because it was one of the arguments raised. That case was decided solely on the issue of whether or not an inter vivos trust was a written agreement to arbitrate. So we then get to, in my opinion, just the Austin case, which again rejects any application there. And more specifically, it says, hey, you need to look at what was the intent of the parties. And so we look at the policy provision, section—I believe it's 20—I'm sorry, 16. And it specifically deals with judgment creditors. And it contemplates that judgment creditors are responsible or involved in an arbitration matter only in one circumstance. An arbitration has already been completed, and there's a direct action where the judgment creditor is suing both CCRG, the appellees in this case, as well as the member. That's not the situation here. The party specifically said no rights under the policy are to be assigned. They did not contemplate, they did not want third parties such as judgment creditors. Now, in this particular case, we happen to be—our claim is based upon the treatment under the insurance policy. But it would be no different, in my view, if, hey, they owe us a million dollars on a loan. And now we find out, hey, there's this denial of coverage here, and we now want to garnish that, not because of anything related to how our claim arose. We don't think that should matter. The equities of all of this, specifically where a non-signatory is thought to be compelled, favor following an able. In this court, I believe, and we cite other cases in there that say when there is a court of appeals that seems to be on point, you should tend to follow unless there's clear evidence to the contrary. I want to just real briefly talk about waiver, and then I'm going to reserve my last three minutes. They cited to you a recent Texas case, and I recognize that it was a 6-3 decision. We find, obviously, that it was sent much more persuasive than all of this. We think the controlling law is the cotton case we cited to you from the Second Circuit, that when you have the right to appeal from an unsuccessful motion to compel, you need to take that. And if you don't, there's almost always going to be prejudice, unless the two exceptions noted. One is you allow a default judgment, so there's no litigation. Or two is the same litigation occurs because there are other parties involved. That's not what happened here. There was solely one party here. The judge understood the unfairness and even remarked about the unfairness. Hey, they did an appeal, and you guys have litigated this, he said, for a year and a half, although that was kind of a slight overstatement of how long it did. But there was certainly prejudice. They moved the judgment on the merits. They responded to our summary judgment. We all went through discovery. And unlike most federal courts, we have this mandatory discovery response project where we had to disclose to them all of our facts, all of our legal theories, all of our witnesses. Excuse me, counsel. I know you're making a significant point, but I have a question, and I'm afraid of running out of time. Would a fair statement of the question that you raise and that you have pointed out to us has not been decided by the Arizona courts whether a non-signatory to an agreement to arbitrate is bound by an arbitration agreement when garnishing from a signatory who is a judgment creditor or judgment debtor? I believe that is a fair issue. That is a fair characterization in this case, yes. Is that a statement of the question, and has it not been decided by the Arizona courts? It has not, to my knowledge. Well, I can say that. I think that Abel decided that question. The Abel case has not been decided by the Arizona Supreme Court. And Abel says no? Correct. And with that, I'll wait for my time. I'm sorry. I have one question on waiver, and it's just a factual question. Am I mistaken? The district court did not find waiver, correct? Correct. Either of the two iterations of the district court, either Judge Logan or Judge Lonza? Correct. So, okay. So you're asking us to find it for the first time on appeal as a matter of law? Yes. Okay. I understand your position. Thank you. Mr. Maceros, you're up. And, Mr. Schwartz, would you put yourself on mute while Mr. Maceros is? Yes, thank you, Your Honor. Thank you, Your Honor. Steven Maceros on behalf of Appley Continuing Care Risk Retention Group, Inc., which we refer to as CCRRG. I think the appellants have even lost view of the actual arguments they've made in the briefing. Their argument was in the district court that Arizona doesn't recognize these exceptions to the binding of a non-signatory and that the Arizona Supreme Court would follow these other cases that they've cited and not allow it. The reason that the JTF case essentially rejects that argument because what the JTF case held, and, yes, they did reject adding a doctrine called the closely related party doctrine, specifically because Arizona law does recognize these exceptions, where they, in citing the Duenas case and the Smith case, which cites the Schoenberger case, that non-signatories can be bound by incorporation by reference, assumption, agency, veil, piercing, alter ego, estoppel, third party beneficiary. And, therefore, there was no reason to adopt this additional theory of closely related party doctrine because Arizona recognizes these theories. So that was the argument they were making. Counsel, this is Judge Kleinfeld. Let me ask you something that bothered me from the time I read the briefs. And I was thinking about how garnishment usually occurs, the vast majority of garnishment cases. In my experience, it's a creditor, a judgment creditor, garnishing the debtor's bank account or garnishing the debtor's wages. In both of those cases, there may be an agreement to arbitrate between the bank and the depositor or between the employee and the employer. I've just never seen one where the judgment creditor, say an automobile finance company or something, is bound to arbitrate, even though the judgment debtor is. And I'm trying to figure out why this is different from that. Well, first of all, several of the cases that we've cited, including the case that the judge district court relied on, the Allied Harmon case, was an insurance case where they applied it in that circumstance. The reason for it, and you're correct, that's the most common way to do it. But it's attaching any type of a debt. But what's affected here is that once it's removed, even though Labrador recognizes that there's subject matter jurisdiction because it's sufficiently separate from the underlying tort claim to be considered a separate independent action. And that's recognized also. The two big questions we were answering in Labrador were whether there's jurisdiction. And the answer was yes. And whether the state 10-day limit on a response to the reply applied. And the answer was no. Well, yes and no. What Labrador addressed was, is the garnishment statute imported into federal court when it's removed? And the answer to that was no. It's not imported under Rule 69 because that only applies to importing it for a federal judgment. It's not incorporated under Rule 64 because it's not. That only applies to future judgment in the existing federal district court case. That's right. And also, indirectly, it's not imported by ERIE. And I say that because under ERIE, if you're going to import, and we made that argument in Labrador, too. I was the one that briefed it. But ERIE has to apply the garnishment statutes as interpreted by the courts of the state. And it's undisputed here that a garnishment, first of all, is not a claim. It's a remedy. It didn't exist in common law. And I quote from the Bennett-Bloom case, courts may not allow garnishment proceedings to follow any course other than that charted by the legislature. And also that it is, garnishments are, statutes are under strict, require strict construction and require strict compliance. So if you're going to import it under ERIE, the district court has no choice but to apply the garnishment statutes as a whole, as the course charted by the legislature. So you either have to reject Labrador 2, which says that the 10-day objection doesn't apply, because you can't piecemeal it. Because Arizona law is very clear. You have to accept it all or none. I mean, you've got to comply all or none. So this is where Labrador 2 actually... This is Judge Hurwitz. Let's assume, just for purposes of discussion, that your reading of Labrador 2 is correct. Still, in the end, we have to decide whether the Arizona Supreme Court would enforce the arbitration clause under these circumstances. Do we not? Essentially. Okay. So, cutting to that question, let me see if I... I want to see where you stand on some issues. You do agree that there has been no decision from the Arizona Supreme Court addressing this situation, which is to say a judgment creditor attaching the debtor's claims under an insurance policy that has an arbitration clause. There's no Arizona case directly on that issue. I would agree with that. Okay. And second, then my question is, given that and given what appears to be some contrary indications in the Arizona law, the Abel decision, which I understand doesn't bind us because it's a court of appeals decision, why isn't the best course of action in this case to certify this question to the Arizona Supreme Court and let them clarify their own law? Well, the point that they made in their brief was that Arizona... Well, I'm not asking what they said in their brief. I'm really not concerned with whether Mr. Schwartz got the argument right or wrong. I'm interested in why we shouldn't, the three judges, certify this question to the Arizona Supreme Court. Because the JTF case recognized that the exceptions to the non-binding or binding a non-signatory were recognized under Arizona. But it didn't decide whether the exception applied in a garnishment proceeding that seeks to garnish the insured's interest under an insurance policy with an arbitration clause. So I understand that. I take it as established even before JTF that the direct benefits estoppel rule was something the Arizona courts might apply. The question is whether they would apply it to this set of facts. So I'm still stuck with the question of why. And I must admit some bias on this, having been a state Supreme Court justice. I was concerned when the federal courts decided questions that I thought were at least close. But I know it's our duty. Given that we have this procedural mechanism, why shouldn't we just ask our friends in Arizona to resolve this issue? Because the issue can be resolved. I mean, once it's recognized that the exceptions apply generally to contracts. And under the Federal Arbitration Act, garnishments have to be on equal footing to any other contract laws as under Arizona law. And they admit in their briefing that these exceptions do apply generally under contract law, but just not to garnishment. By doing that, they run afoul of the AT&T mobility case that says that, no, you can't treat garnishment separately because. That's kind of a threat, getting to the AT&T Concepcion case. I'm wondering why, if we don't certify, we shouldn't just treat ABLE as the best predictor of what the Arizona Supreme Court would do. Because ABLE didn't address any of the exceptions. And that was noted by the later Court of Appeals cases. ABLE just quickly said, well, there's. And they didn't even say any law. They just said, well, it's not binding on a non-signatory. So 30 years later, once you've got Labortu, that removes it to federal court. And Labortu hold that the garnishment statutes don't apply under these circumstances, which are virtually the only thing that's different. I admit, Mr. Harris, this is Judge Breast. That's what I had understood your argument to be all along, which is that. However, this may have been characterized in the Arizona state court system. Once it comes up here, garnishment is just a remedial device. What we're talking about is a claim on a contract. And no one really disputes that if you're suing on a contract, you take the bidder with the suite. And in this case, the bidder may be an arbitration clause. And there may be some other suite in there, too. But I took that to be your fundamental point. That is correct. So let me ask that. Let me ask the question. Mr. Schwartz was posing before. I think I know your answer. He said, I want to win. But if you think you're going to rule against me, you ought to send it to the Arizona Supreme Court. I take it you have the same position. I would be more than happy to do that. I would prefer not to, though, because I thought I thought it was a little bit. Not much of a concession by Mr. Schwartz. It would be much of a concession by you either. Correct. If I may, I'd like to briefly address the waiver issue. First of all, they did not make the waiver argument in the district court, which is why the judge didn't address it in his order. They did not make this argument. So that's why I asked the question to Mr. Schwartz. So we would have to find it to be clear error. Or the district court or plain error for the district court not to have Sue Esponte found this argument waived. That's correct. That is correct. So on the merits of this argument, what interests me is that there's obviously some point at which waiver occurs. I'm not sure it was reached in this case. What's your view about how much has to occur in the district court before we get to waiver? Well, I will tell you that if you look at all of the case. Well, first of all, we cited a litany of cases that that when you assert it vigorously, the right to arbitrate and only react to court orders or or what the other party is doing, then that isn't enough to waive it. Even if even if proceeded to trial on the merits. Well, that's a little different. If if you look at all of their cases, except two, and I'll get to those, what happened was the the proponent of arbitration waited several months, if not years, to first assert the arbitration clause after undergoing a lot of litigation. Or in the case of the Sloan Cotton Sloan case, they waited until after a final adverse judgment on the merits. So in every one of their cases, but two, they waited until they lost a motion or some ruling on the merits, and then they chose to do it. I understand what the cases say. I was I was trying to figure out what your position is. So your position is having asserted the right to arbitrate early on. You you could have then litigated the case through judgment on the merits and still not waived your arbitration defense. No, no, that is not our position. Our first of all, our position is we we not we raise it at every stage, every every. No, no, I'm not asking. I'm just trying to figure out what from you. Where's the dividing line? I understand your position is that you did everything you should have done. I'm just trying to figure out where the dividing line is. When you wait to reassert it until you have an adverse ruling on the merits, we purposely did not do that. We never briefed anything on the merits. If you look at our 12C motion, we only addressed the pleading requirements. Does a writ of garnishment meet the federal rules and Iqbal standard for pleading a claim? We didn't say we did not raise anything on the merits as to the coverage to speak at all. It was solely and and they were had to replete. That's what Labrador to recognize. They have to replete to state a claim under the federal rules. And that's what the 12C motion highlighted. We did not ask for ruling on the merits of the subject to the of the arbitration clause. And then when they filed a motion less than seven months after the judge's original denial, we renewed our motion. No ruling on the merits was was was obtained. I think that where they talk about the heads, I win, tails, you lose. It's when you wait until you get a ruling on the merits that it's too late to now make the motion or renew the motion because you don't like how the judges ruled against you somewhere down the line. That's never happened here. Mr. Macias, your time's expired. So unless one of my colleagues has questions. Mr. Schwartz, you have a little bit of time left for rebuttal. Now, since I told you to mute, I guess I ought to tell you that. Sorry, your honor. Yeah, let me quickly address the waiver issue and then I'll go back to the substantive part. You can't just wait until the court is ready to rule. The motion for summary judgment was fully briefed. They asked for it. They forced us to litigation for six months to nine months, depending on how you view it. We went through the cost. Those are standard prejudice that every court has found. Just because this judge decided to reach out and decide this issue first before deciding the merits, I don't believe is sufficient. There is more than enough waiver under the cotton aspect. Judge Brest mentioned that he views this, that garnishment is merely a remedy. That's not really what garnishment is. Arizona cases have made it clear that a garnishment is not a substitute for a contract action. We cited the Bennett v. Bloom case. While they have the same objective, they don't get there the same way. It's why garnishment is different. It's why we believe ABLE, in talking about the equities of the situation, makes a special rule for judgment creditors who are non-signatory. Aren't you here trying to stand in the shoes of Capri and obtain Capri's rights under the contract? Isn't that the whole basis for the lawsuit? We don't view ourselves as standing in their shoes. We view it as putting a lien against a debt. Ultimately, if we get a judgment, being able to exercise and collect on that lien, that's the way it's been described. In fact, that's the way the Iowa courts have described it as well. It's the way the Harkins court did it in the Fourth Circuit. The basis for your claim is the contractual relationship that at one point exists between the insurer and the insured. And the insured is now out of the picture, and you are here. And so I guess I don't understand why, if you're here trying to take advantage of that contract, you're going to try to argue for the things in that contract that help you, but you're going to have to take the things that don't. And one of those seems to be the arbitration clause. That's exactly what the Arizon Supreme Court said was true in JTF holding. We think they would come to the same conclusion here just as they did in ABLE. Just really quickly, this is not merely procedural. The garnishment statute didn't get wiped away. Labrador says once you've removed the federal court, all that happens is you'll follow the procedures here, not necessarily that 10-day limit. Under ERIE, you still apply the substantive law of where it was removed from. The procedural law is under the federal system. There's nothing different about that. I see my time has expired. I appreciate your time and appreciate allowing everyone to appear virtually. Any other questions for my colleagues? If not, I thank both counsel for their good briefing and good arguments, and this case will be submitted. We will be in recess until tomorrow. Thank you, Your Honors. Everyone have a nice day. Thank you, Your Honors.
judges: Kleinfeld, Hurwitz, Bress